**UNITED STATES, Appellee,**

v.

**John T. GRADY, Jr., Airman, U.S. Air Force, Appellant.**

No. 43634.
ACM S25388.

U. S. Court of Military Appeals.

April 25, 1983.

For Appellant: *Colonel George R. Stevens, Major William H. Lamb* (on brief).

For Appellee: *Colonel Kenneth R. Rengert, Major Michael J. Hoover* (on brief); *Colonel James P. Porter.*

*Opinion of the Court*

COOK, Judge:

Pursuant to his pleas, the accused was convicted by a special court-martial of transferring and using marijuana, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. He was sentenced by members to a bad-conduct discharge, confinement at hard labor for 3 months, forfeiture of $330.00 pay per month for 3 months, and reduction to airman basic. The convening and supervisory authorities approved the sentence as adjudged, and the Court of Military Review affirmed.

We granted the accused's petition for review on the following issue:

DOES THE MILITARY JUDGE HAVE A DUTY *SUA SPONTE* TO RESTRICT ARGUMENT OF COUNSEL UNDER MANUAL PARAGRAPH 72*c* WHERE COUNSEL ARGUE COMMAND POLICY?

We answer in the affirmative and reverse.

The subject of command policy was first raised by defense counsel during his *voir dire* of the members empaneled to sentence the accused. He ascertained that each member of the court-martial knew "what the SAC [Strategic Air Command] Drug Rehab Program" was. Subsequently during closing arguments on sentence, the assistant trial counsel contended that drug "activity cannot under any circumstances be tolerated, especially in SAC." In response, defense counsel asserted that the drug policy in the Air Force varied from command to command, but that it was most strictly enforced against members of the Strategic Air Command. Numerous times he stated that the penalties for discovered drug offenses were most severe in SAC, and asserted that had the accused been assigned to some other command, he would not face such strict treatment. He concluded that imposition of "[a] BCD I think is rediculous [sic]. It's the knee-jerk SAC, and I don't say Air Force, SAC reaction to this offense." The assistant trial counsel responded:

You all, though, in this court, at this base, are members of SAC. You know what the SAC policies are, and I think you are somewhat bound to adhere to those policies in deciding on a sentence.

\* \* \* \* \* \*

As you know, in SAC, under the Rehabilitation Program, persons convicted of transferring marijuana or any drug are not eligible for rehabilitation. So to even consider that would be foolish, out of the question.

There were no objections to these comments and the military judge was silent.

At the conclusion of his sentencing instructions (which contained no limiting instructions referring to counsel's comments) the following ensued:

MJ: Major Billings asks, "Reference has been made several times to SAC policy on drug abuse. Has that policy been admitted as evidence for us to review?" The answer to your question is no, it has not. Does that satisfy you, sir?

MEMBER ( . . . ): It must.

MJ: The fact is, that regardless of what SAC policy is, or any other policy is, it is your independent determination of what is an appropriate sentence in this case which should determine what sentence you vote for or impose.

Regardless of our conclusions as to the wisdom and propriety of defense counsel's tactics, see *United States v. Rivas,* 3 M.J. 282, 286 (C.M.A.1977), the repeated references to SAC command policy as to the disposition of drug offenders was prejudicial error, and the military judge's failure to interrupt at first mention and give appropriate limiting instructions exacerbated the error. The concluding advice as to the members' responsibilities to independently determine an appropriate sentence was too little and too late. *See United States v. Estrada,* 7 U.S.C.M.A. 635, 638, 23 C.M.R. 99, 102 (1957); *United States v. Fowle,* 7 U.S.C.M.A. 349, 352, 22 C.M.R. 139, 142 (1956). At that point the matter of command policy was obviously so fixed in the members' minds that only comprehensive limiting instructions could have cured the error.

We have long condemned any references to departmental or command policies made before members charged with sentencing responsibilities. *United States v. Silva,* 8 U.S.C.M.A. 105, 23 C.M.R. 329 (1957); *United States v. Estrada* and *United States v. Fowle,* both *supra; see also United States v. Davis,* 8 U.S.C.M.A. 425, 24 C.M.R. 235 (1957). This is not in any way to intimate that there is anything wrong with the determination and promulgation of general service or command policies and pronouncements which are a proper exercise of the command function. *United States v. Estrada, supra* at 638, 23 C.M.R. at 102. What is improper is the reference to such policies before members in a manner which in effect brings the commander into the deliberation room. *United States v. Fowle, supra* at 351, 22 C.M.R. at 141. It is the spectre of command influence which permeates such a practice and creates "the appearance of improperly influencing the court-martial proceedings" which "must be condemned." *United States v. Hawthorne,* 7 U.S.C.M.A. 293, 297, 22 C.M.R. 83, 87 (1956).

A trial must be kept free from substantial doubt with respect to fairness and impartiality. "A judicial system operates effectively only with public confidence—and, naturally, that trust exists only if there also exists a belief that triers of fact act fairly." *United States v. Stringer,* 5 USCMA 122, 17 CMR 122. This appearance of impartiality cannot be maintained in a trial unless the members of the court are left unencumbered from powerful external influences.

*United States v. Fowle, supra* at 352, 22 C.M.R. at 142.

Further, it is the *fact* of the reference to command policy that has been condemned and not the *source* of the reference. *United States v. Davis, supra; cf. United States v. Silva, supra* at 109, 23 C.M.R. at 333 (Ferguson, J., dissenting). Hence, whether it was trial counsel or defense counsel who first broached the subject of command policy, the mention of such policy before the members improperly invades the province of their sentencing deliberations.

Since neither counsel exhibited any awareness of our previous decisions in this

area, we must look to the military judge "to assure that the accused receives a fair trial." *United States v. Graves,* 1 M.J. 50, 53 (C.M.A.1975) (footnote omitted). This he did not do, *see* para. 73*c,* Manual for Courts-Martial, United States, 1969 (Revised edition), and the accused was prejudiced by his inaction. Article 59(a), UCMJ, 10 U.S.C. § 859(a).

The decision of the United States Air Force Court of Military Review is reversed as to sentence and the sentence is set aside. The record of trial is returned to the Judge Advocate General of the Air Force. A rehearing may be ordered.

Chief Judge EVERETT and Judge FLETCHER *concur.*