UNITED STATES, Appellee,

v.

Roger L. KROPF, Chief Mineman
U.S. Navy, Appellant.

No. 93–0061.
CMR No. 90 3411.

U.S. Court of Military Appeals.

Argued Nov. 9, 1993.

Decided March 4, 1994.

For Appellant: *Lieutenant Michael C. Pallesen*, JAGC, USNR (argued); *Major Steven P. Hammond*, USMC.

For Appellee: *Lieutenant Commander Stephen A. Stallings*, JAGC, USN (argued); *Colonel T.G. Hess*, USMC, and *Lieutenant E. Henriques*, JAGC, USNR (on brief); *Commander W.F. Shields*, JAGC, USN.

*Opinion of the Court*

CRAWFORD, Judge:

Contrary to his pleas, appellant was convicted by general court-martial with enlisted members of conspiracy to distribute methamphetamine, two specifications of distribution of methamphetamine, two specifications of use of methamphetamine and marihuana, assault, and carrying a concealed weapon, in violation of Articles 81, 112a, 128, and 134, Uniform Code of Military Justice, 10 USC §§ 881, 912a, 928, and 934, respectively. The convening authority approved the sentence of a dishonorable discharge, confinement for 5 years, forfeiture of all pay, and reduction to the lowest enlisted grade. The Court of Military Review affirmed the findings and sentence in an unpublished opinion dated August 7, 1992.

We granted review on the following issue: [1]
WHETHER THE NAVY–MARINE CORPS COURT OF MILITARY REVIEW ERRED WHEN IT HELD THAT TRIAL COUNSEL'S REFERENCES TO THE NAVY'S "ZERO TOLERANCE POLICY TOWARDS DRUGS" DURING

1. We also granted review of the Appointments Clause issue which has been resolved in the Government's favor in *Weiss v. United States*, ——— U.S. ———, 114 S.Ct. 752, 127 L.Ed.2d 1 (1994).

SENTENCING ARGUMENTS WAS NOT PLAIN ERROR.

We hold that trial counsel's argument that the court members adjudge a sentence based on the Navy's policy was not plain error.[2]

## FACTS

During closing argument trial counsel stated:

> [T]he decision that you need to make now is perhaps a more difficult decision than the one you just made [on findings]. The decision you just made was simply a yes or no. The decision you make now goes much farther than that. I'd ask you to consider that on the one hand, yes, you have a Chief Petty Officer with 18 years in service and a good service record. I'd ask you to balance that with the fact that this Chief Petty Officer with 18 years in is a drug dealing, drug using, thug. He's a blight upon the Naval service and he must be removed from the Naval service. The Navy has a zero tolerance policy towards drugs for a reason, a very good reason. We work in a dangerous environment, we work with dangerous equipment, and other people's lives depend upon what we do from day to day. Yet, this Chief Petty Officer with 18 years in made a conscious decision that he would become involved in the use and distribution of methamphetamine. He knew what that Navy drug policy is. There's no way he could not be aware of it after 18 years in the Navy. A Chief Petty Officer is supposed to set an example. All the enlisted ranks should be able to look up to him and say, "I want to be like him. I want to aspire to be a Chief Petty Officer." Is this what the E–1s and E–2s coming into the Navy now should be aspiring to be like? Can anything be worse than what you have before you now? ... Now he may be crying here today, but was he crying back when he was distributing the drugs, back when he was using the drugs, no. He seemed to think it was a gag, it was something he could get away

with. He said, "The only way they can catch me now is if they catch me by surprise on a piss test." That's his attitude towards the Navy's drug policy. He was right when he told Chief Warrant Officer Stevenson, "You have a bigger job ahead of you than you can imagine." The Navy has a horrible, tremendously difficult job ahead of it trying to weed out drug usage and it's extremely disheartening to realize that we need to begin with Chief Petty Officers like this one....

There was no objection or request for a curative instruction.

## DISCUSSION

■ Trial counsel is required to represent zealously the Government and offer vigorous arguments for sentencing. Rule 1.3 (Comment), ABA Model Rules of Professional Conduct (1989 ed.); *United States v. Edwards*, 35 MJ 351 (CMA 1992). Arguments must be based on a fair reading of the record. *United States v. White*, 36 MJ 306 (CMA 1993); *United States v. Nelson*, 1 MJ 235 (CMA 1975). Counsel may comment on contemporary history or matters of common knowledge within the community. *United States v. Long*, 17 USCMA 323, 38 CMR 121 (1967). But RCM 1001(g), Manual for Courts–Martial, United States, 1984, provides that

> [t]rial counsel may not ... refer to the views of ... [convening or higher] authorities or any policy directive relevant to punishment.... Trial counsel may, however, recommend a specific lawful sentence and may also refer to generally accepted sentencing philosophies, including rehabilitation of the accused, general deterrence, specific deterrence of misconduct by the accused, and social retribution.

As to commenting on service policies, our prior decisions in *United States v. Kirkpatrick*, 33 MJ 132 (CMA 1991), and *United States v. Grady*, 15 MJ 275 (CMA 1983), holding that the trial counsel's argument was

---

2. Since the granted issue asks us to determine whether trial counsel's argument constituted plain error, it is not necessary for us to consider whether the argument was error in the first instance.

plain error, are distinguishable. In *Kirkpatrick,* we held that the military judge injected improper command-policy considerations into the deliberations by giving the following instructions:

> Okay. He has an ARCOM [Army Commendation Medal] with two oak leaf clusters, and I think he's got four awards of the Good Conduct Medal, among others. There is no evidence that he has any criminal record from civilian life. There's no evidence of any Article's 15 or courts-martial convictions. Consider the testimony of the three defense witnesses who came in and testified live as to the quality of his work. His efficiency apparently requires little or no supervision, and is very proficient and gets the mission done. And at least by implication, the accused has expressed to you a desire to remain in the service. Now, on the other hand, you can consider this letter of reprimand he received, although there is also rebuttal to that letter provided by him which must be considered. Consider the nature of the offenses, particularly the fact that one of the offenses involves marijuana, and consider all the time and money and expense that the Army consumes each year to combat marijuana, and here we have a senior noncommissioned officer directly in viola-·tion of that open, express, notorious policy of the Army: Though [sic] shalt not.

*Id.* at 133. We held that the judge's instructions were erroneous and rejected waiver and harmless-error analyses.

In the *Grady* case reference to the Strategic Air Command (SAC) drug rehabilitation program was continually made by both counsel. Although first raised by defense counsel, trial counsel responded as follows:

> You all, though, in this court, at this base, are members of SAC. You know what the SAC policies are, and I think you are somewhat bound to adhere to those policies in deciding on a sentence.
>
>      \*      \*      \*
>
> As you know, in SAC, under the Rehabilitation Program, persons convicted of transferring marijuana or any drug are not eligible for rehabilitation. So to even con-

sider that would be foolish, out of the question.

15 MJ at 276.

We stated:

> Regardless of our conclusions as to the wisdom and propriety of trial defense counsel's tactics, the repeated references to SAC command policy as to the disposition of drug offenders was prejudicial error, and the military judge's failure to interrupt at first mention and give appropriate limiting instructions exacerbated the error....

*Id.* at 276 (citations omitted). We concluded by noting that, since neither counsel appeared to be aware of this Court's "decisions in this area, we must look to the military judge 'to assure that the accused receives a fair trial.'" *Id.* at 276–77. We also condemned references to departmental or command policies made before members:

> This is not in any way to intimate that there is anything wrong with the determination and promulgation of general service or command policies and pronouncements which are the proper exercise of the command function. What is improper is the reference to such policies before members in a manner which in effect brings the commander into the deliberation room. It is the spectre of command influence which permeates such a practice and creates "the appearance of improperly influencing the court-martial proceedings" which "must be condemned."

*Id.* at 276.

■ This case is distinguishable from both *Kirkpatrick* and *Grady.* It is neither ·"clear" nor "obvious" that the argument infected the members' deliberations with Navy policy or that it affected a substantial right of appellant. *United States v. Toro,* 37 MJ 313, 316 (CMA 1993); *United States v. Fisher,* 21 MJ 327 (CMA 1986).

■ While we do not find plain error based on the facts and circumstances of this case, this is an area in which trial counsel are well advised to tread lightly. The danger of interjecting the command structure into the members' deliberations is ever present.

Likewise, defense counsel should be ever vigilant to object and seek a curative instruction where appropriate. The failure to object constitutes waiver in the absence of plain error. RCM 1001(g).

The decision of the United States Navy–Marine Corps Court of Military Review is affirmed.

Judges COX, GIERKE, and WISS, concur.

SULLIVAN, Chief Judge (concurring):

It is difficult for me to distinguish the purpose of reference to service policy made in this case from that considered in *United States v. Kirkpatrick*, 33 MJ 132 (CMA 1991). Nevertheless, the defense voiced no objection to trial counsel's argument based on zero tolerance policy; and, thus, the granted issue is one of plain error. *See* RCM 1001(g), Manual for Courts–Martial, United States, 1984. In this regard, I note that the reference to policy in this case was not made by the military judge (*cf. United States v. Kirkpatrick, supra*) or made in a manner which unambiguously directed the members to heed this policy in their sentencing decision. *Cf. United States v. Grady*, 15 MJ 275 (CMA 1983). Any error, therefore, was not obvious. Moreover, in view of the weapon's conviction in this case, I am unable to conclude that substantial prejudice occurred as a result of this argument. Art. 59(a), Uniform Code of Military Justice, 10 USC § 859(a). *See United States v. Fisher*, 21 MJ 327 (CMA 1986). Accordingly, I find no plain error in this case.