**UNITED STATES**

v.

**Michael E. THOMAS, 413 06 0934, Airman (E–3), U.S. Navy.**

NMCM 95 02066.

U.S. Navy–Marine Corps
Court of Criminal Appeals.

Sentence Adjudged 11 July 1995.

Decided 31 May 1996.

LT John J. Luke, JAGC, USNR, Appellate Defense Counsel.

CDR D.H. MYERS, JAGC, USN, Appellate Government Counsel.

CAPT David S. Durbin, JAGC, USNR, Appellate Government Counsel.

Before DeCICCO and McLAUGHLIN, Senior Judges, and CLARK, J.

DeCICCO, Senior Judge:

We hold in this case that trial counsel's references to the Navy's zero-tolerance policy toward drug abuse that were made during *voir dire* and his argument on sentence were improper, and that such comments constituted error, but that in light of the lack of objection by defense counsel, we must examine the case for plain error. Under the circumstances of this case, we do not find plain error and affirm.

*Facts*

The appellant pled guilty to an unauthorized absence of about 17 months and the wrongful use of marijuana in violation of Articles 86 and 112a, Uniform Code of Military Justice [UCMJ], 10 U.S.C. §§ 886, 912a. At this special court-martial, he elected to have members determine his sentence. During *voir dire,* the trial counsel introduced

himself to the members, explained that there were two offenses before the court, and immediately launched into the Navy's policy on drug abuse:

> TC: The second offense, as you noticed, is a marijuana offense, use of marijuana. Is everyone familiar with the CNO's [1] policy on drug use?
>
> [The members indicated affirmatively.]
>
> TC: Does anyone disagree with the zero tolerance approach that the CNO has taken regarding drug use?
>
> [The members indicated negatively.]
>
> TC: Finally, there's a lot of talk about marijuana as related to other drugs. Does anyone believe that a marijuana user should be treated differently than any other drug user?
>
> [The members indicated negatively.]

Record at 30. These three questions constituted *all* of trial counsel's *voir dire.* Defense counsel did not object to the questions, and the military judge did not intervene *sua sponte.*

Following the presentation of evidence on sentencing, the trial counsel argued to the members on an appropriate sentence. His argument was relatively brief, encompassing only about a page and a half of the record, but he stated:

> Let's look at the drug use first. As you know from reading the paper and things like that, drug use is a very big problem in society today. *In fact, the CNO puts it in such high regard that he has a zero tolerance policy for anyone who uses any kinds [sic] of drugs.* By [sic] the accused here, although he gave you the reason why he used the marijuana, he just assists and facilitates drug usage out there. He went and bought drugs or got drugs from someone and that just contributes to that. *He used drugs, and that's against the rules— zero tolerance there.*

Record at 57–58 (emphasis added). Once again, the defense did not object and the military judge did not intervene. No cura-

---

1. "CNO" is an abbreviation for the Chief of Naval Operations. It is universally known and recognized by members of the Navy.

tive instruction was given to the members. Following a period of deliberations, the members returned to the courtroom and the president asked whether they could adjudge a discharge other than a bad-conduct discharge and whether they could suspend punishment. Record at 69. After receiving a negative reply from the military judge to both inquiries, and following additional deliberations, the members sentenced the appellant to be discharged with a bad-conduct discharge, to be confined for 45 days, and to be reduced to pay grade E-1. The convening authority approved the sentence.

### Discussion

In his initial pleading to this Court, the appellant submitted a single assignment of error alleging that his sentence was inappropriately severe.[2] We specified the issue of whether trial counsel's references to the CNO's zero tolerance policy toward drug offenses constituted plain error.[3]

In *United States v. Grady*, 15 M.J. 275 (C.M.A.1983), the Court was confronted with a situation in which both counsel referred to the Strategic Air Command [SAC] drug rehabilitation program, followed by these comments from the prosecutor to the court members: "You all, though, in this court, at this base, are members of SAC. You know what the SAC policies are, and I think you are somewhat bound to adhere to those policies in deciding on a sentence." *Grady*, 15 M.J. at 276. There was no objection to these comments and no action by the military judge. In condemning such references to departmental or command policies before members charged with sentencing responsibilities, the Court held that the military judge has a *sua sponte* duty to restrict arguments of counsel that involve command policy, and it set aside the sentence. The hold-

ing in *Grady* has been incorporated into Rule for Courts-Martial [R.C.M.] 1001(g), Manual for Courts-Martial, United States (1995 ed.);[4] *see also United States v. Reitz*, 17 M.J. 51 (C.M.A.1983) (summary disposition setting aside the sentence where trial counsel referred to CNO's policy as to drugs during sentencing argument); *United States v. Schomaker*, 17 M.J. 1122 (N.M.C.M.R.1984).

In *United States v. Kropf*, 39 M.J. 107 (C.M.A.1994), trial counsel argued that the accused was a "drug dealing, drug using, thug," that he was a "blight upon the naval service and he must be removed," and that the Navy "has a zero tolerance policy towards drugs for a reason, a very good reason," and that the accused, a veteran of 18 years service, well knew of the policy. *Kropf*, 39 M.J. at 108. Again, there was neither defense objection nor curative instruction. After analyzing the prior case law, the Court found no plain error because it was "neither 'clear' nor 'obvious' that the argument infected the members' deliberations with Navy policy or that it affected a substantial right of appellant." *Kropf*, 39 M.J. at 109.

■ In the case at bar, we find the trial counsel's references to the CNO's policy during *voir dire* and argument on sentence improper. He was in effect telling the members right from the beginning of *voir dire* that the Navy's zero tolerance policy dictated that the appellant should be separated with a punitive discharge. We view the entire scope of his questioning in *voir dire* as directed toward "poisoning the well" by injecting an improper and irrelevant policy into their minds rather than obtaining information for use in the intelligent exercise of challenges. *See* R.C.M. 912 discussion.

2. APPELLANT'S SENTENCE IS INAPPROPRIATELY SEVERE BECAUSE THE NATURE OF HIS OFFENSES DOES NOT WARRANT THE IMPOSITION OF A BAD-CONDUCT DISCHARGE. (FOOTNOTE OMITTED.)

3. WHETHER TRIAL COUNSEL'S REFERENCES TO THE NAVY'S ZERO TOLERANCE POLICY TOWARDS DRUG OFFENSES DURING *VOIR DIRE* AND AGAIN DURING SENTENCING ARGUMENT CONSTITUTED PLAIN ERROR AND IF SO, WHAT RELIEF SHOULD

BE AFFORDED THE APPELLANT UNDER THE CIRCUMSTANCES OF THIS CASE? (CITATION OMITTED.)

4. "Trial counsel may not in argument purport to speak for the convening authority or any higher authority, or refer to the views of such authorities of any policy directive relative to punishment or to any punishment or quantum of punishment greater than that court-martial may adjudge."

The irrelevance of such questioning can easily be seen when one considers the following. What if one of the members had answered "no" to the question as to whether he was familiar with the CNO's policy on drug abuse? Would that provide a basis for challenge? What if a member answered that he did not agree with the policy of zero tolerance, and that there could be cases where an accused, convicted of a drug offense, might merit another chance? Would this provide trial counsel with any basis whatsoever to challenge the member?

■ For many years, appellate military courts have been counselling litigators to "tread lightly" in this area. *See, e.g., Kropf,* 39 M.J. at 109. We will state once more: *references to command or departmental policies have no place in the determination of an appropriate sentence in a trial by court-martial.* We also find that the military judge erred in not giving a *sua sponte* curative instruction to the members in this case. *Grady.* Military judges must remain alert to correct such blunders by counsel, for we "must look to the military judge to assure that the accused receives a fair trial." *Kropf; Grady,* 15 M.J. at 277.

■ While error occurred in this case, we must examine for plain error due to the lack of defense objection. *Kropf.* To find plain error, we must find that error occurred, that it was obvious or clear, and that it adversely affected substantial rights. *United States v. Toro,* 37 M.J. 313 (C.M.A.1993); *see also United States v. Fisher,* 21 M.J. 327 (C.M.A. 1986).

■ The appellant has established the first two parts of the test, but he has failed to convince us that the error in this case adversely affected his substantial rights. Although the members had questions about administrative discharges and suspension of punishment, they sentenced the appellant to a reduction, 45 days confinement and a bad-conduct discharge. This was well below the jurisdictional maximum of 6 months confinement. Moreover, no forfeitures of pay were adjudged. Even completely discounting the marijuana offense, we would find the sentence appropriate for the remaining offense alone—a 17-month unauthorized absence. Therefore, in light of the lenient sentence adjudged and the severity of the remaining offense, we find no prejudice to the appellant due to the error, and, concomitantly, no plain error. *See also,* Article 59(a), UCMJ. We add, however, that given different facts, we would not hesitate to take corrective action when relief is necessary. Article 66(c), UCMJ; *Grady.*

The sentence in this case is not inappropriately severe.

Accordingly, the findings and sentence, as approved on review below, are affirmed.

Senior Judge McLAUGHLIN and Judge CLARK concur.