UNITED STATES, Appellant

v.

Jeffrey S. SCHNITZER, Specialist
U.S. Army, Appellee.

No. 95–5001.
Crim.App. No. 9202662.

U.S. Court of Appeals for
the Armed Forces.

Argued Dec. 5, 1995.

Decided Aug. 30, 1996.

For the Accused: *Richard T. McNeil* (argued); *Captain Richard E. Burns* (on brief).

For the United States: *Major Lyle D. Jentzer* (argued); *Colonel John M. Smith* (on brief).

*Opinion of the Court*

SULLIVAN, Judge:

During December of 1992, the accused was tried by a general court martial composed of officer and enlisted members at Vilseck, Germany. Entering mixed pleas, he was found guilty of attempted premeditated murder; violation of a lawful general regulation (wrongful possession of drug paraphernalia); wrongful possession of marijuana; rape (2 specifications); forcible oral and anal sodomy, and kidnapping,[1] in violation of Articles 80, 92, 112a, 120, 125, and 134, Uniform Code of Military Justice, 10 USC §§ 880, 892, 912a, 920, 925, and 934, respectively. He was sentenced to a dishonorable discharge, confinement for 29 years, total forfeitures, and reduction to pay grade E–1. The convening authority approved this sentence on February 17, 1993. On September 19, 1994, the then-Court of Military Review affirmed the findings but set aside the sentence and authorized a rehearing. On November 2, 1994, the now-Court of Criminal Appeals,[2] on reconsideration, reached the same result. 41 MJ 603.

On November 28, 1994, the Judge Advocate General of the Army forwarded the following issues to this Court for review pursuant to Article 67(a)(2), UCMJ, 10 USC § 867(a)(2) (1989). He asked:

I

WHETHER THE MILITARY JUDGE HAS A *SUA-SPONTE* DUTY TO GIVE A LIMITING INSTRUCTION, OVER APPELL[EE]'S TRIAL DEFENSE COUNSEL'S AFFIRMATIVE, DELIBERATE, AND CONSCIOUSLY DESIGNED OBJECTION, WHEN A COACTOR'S PRETRIAL AGREEMENT SENTENCE LIMITATION HAS BEEN PROPERLY ADMITTED DURING FINDINGS TO DEMONSTRATE BIAS OR TO REHABILITATE AN IMPEACHED WITNESS.

II

WHETHER THE ARMY COURT ERRONEOUSLY FOUND PLAIN ERROR WHEN APPELL[EE]'S TRIAL DEFENSE COUNSEL AFFIRMATIVELY, DELIBERATELY, AND CONSCIOUSLY OBJECTED TO AND WAIVED HIS RIGHT TO A LIMITING INSTRUCTION REGARDING THE COURT–MARTIAL PANEL'S USE DURING SENTENCING OF PROPERLY ADMITTED EVIDENCE OF BIAS AND WITNESS REHABILITATION IN THE FORM OF A COACTOR'S PRETRIAL AGREEMENT SENTENCE LIMITATION.

We hold that no plain error occurred under the circumstances of this case. *Cf. United States v. Kirkpatrick,* 33 MJ 132 (CMA 1991) (plain error for military judge to instruct members to consider service drug policy). The failure of the military judge to instruct the members not to consider evidence of a coactor's pretrial agreement in determining the accused's punishment was not "clear or obvious" error prejudicial to his substantial rights. *See United States v. Kropf,* 39 MJ 107 (CMA 1994); *cf. United States v. Grady,* 15 MJ 275 (CMA 1983) (plain error for military judge to fail to give limiting instruction on obvious command-policy reference); *see*

---

**1.** The court-martial order is of little assistance in determining the offenses found in this case because the description of the offenses omits many essential facts which should be there.

**2.** We note that while citing a 1983 case as (CMA 1983) and a 1994 case as (CMA 1994), the opinion refers to this Court as the Court of Appeals for the Armed Forces. 41 MJ at 606. The 1994 name change is **prospective** only. *See Ryder v. U.S.,* — U.S. —, — n. 1, 115 S.Ct. 2031, 2034 n. 1, 132 L.Ed.2d 136.

*generally United States v. Prevatte,* 40 MJ 396 (CMA 1994).

Schnitzer was charged with and found guilty of committing a number of brutal and heinous crimes with a coactor against IR, a German National female. The facts and circumstances surrounding the certified issues were noted by the Court of Criminal Appeals as follows:

> During the government's case in chief, the trial counsel introduced evidence concerning SPC [Specialist] Campbell [the accused's coactor]'s pretrial agreement, including the convening authority's sentence limitation. In an apparent attempt to preempt the defense on the issues of SPC Campbell's credibility and bias, the trial counsel entered into the following exchange with SPC Campbell.
>
> Q. [...] When you pled guilty at your court-martial were you pleading guilty also to the crimes that involved Specialist Schnitzer?
>
> A. Yes, ma'am. The rape and assault and oral sodomy, kidnapping.
>
> [* * *]
>
> Q. Okay. Was that pursuant to a pretrial agreement? Was that with a pretrial agreement?
>
> A. Yes, ma'am, I had one.
>
> Q. And, how many years did you have in that pretrial agreement? What was your deal for?
>
> A. If I remember correctly, it was for 28 years.
>
> Q. And, what did you receive at your court-martial?
>
> A. I received a 15 year sentence.

41 MJ at 605.

The civilian defense counsel failed to object to this line of questioning and in fact asked SPC Campbell if he was not testifying in the hope of getting a reduction in his "15–year sentence." Also the military judge did not give an appropriate limiting instruction to preclude the members from considering this evidence for any purpose other than assessing bias.

The Court of Criminal Appeals in its original opinion commented on these facts as follows:

> Rule for Courts–Martial 1001(g) [hereinafter RCM] reflects the United States Court of Military Appeal's [sic] concern over a convening authority's improper influence over panel members during sentencing deliberations. Under RCM 1001(g), a trial counsel may not, in a sentencing argument, "purport to speak for the convening authority or any higher authority, or refer to the views of such authorities, or any policy directive relative to punishment."
>
> We believe, however, *Grady [United States v. Grady,* 15 MJ 275 (CMA 1983)] is broader than RCM 1001(g)'s condemnation of improper trial counsel argument. We find that, in this case, placing before the panel the exact sentence limitation terms of this coactor's pretrial agreement with the convening authority—at any time in a court martial—amounts to placing before the panel the views of that official as to an "appropriate" sentence. This action improperly affects the panel with a powerful external influence. We hold, therefore, that reference before a panel to a specific sentence limitation agreed to by a convening authority in a coactor's case, absent a limiting instruction, improperly invades the panel's sentence deliberations, and is error.

Unpub. op. at 5–6 (footnote and citations omitted).

Finally, the record of trial reveals that prior to sentencing deliberations, trial counsel made a request for an appropriate instruction on this evidence.[3] At this point the following exchange occurred:

> believed to be the sentence received by Specialist Campbell in an earlier court-martial. You are not to consider counsel's representations about Specialist Campbell's sentence for any purpose whatsoever.

---

3. The proposed instruction which is attached to the record as appellate exhibit XIII states in its entirety:

    In its opening statement [and examination of SPC Campbell] the counsel suggested what it

MJ: Mr. Bellen [civilian defense counsel], is there any objection to the Government's proposed instruction?

CDC: Yes, Your Honor. I believe what's contained in that proposed instruction is contained actually in your standard instruction. By giv[ing] that, you would unnecessarily highlight the Government's point. They certainly may argue.

MJ: I will not give the Government's proposed instruction. Are there any additional requests for instruction by either counsel?

ATC: No, sir.

MJ: By defense?

CDC: No, Your Honor.

The members of the accused's court-martial subsequently sentenced him, *inter alia*, to 29 years' confinement.

---

■ It is widely recognized that the codal prohibition against unlawful command influence (Art. 37(a), UCMJ, 10 USC § 837(a)) is a critical safeguard in our modern military justice system. *See Weiss v. United States*, 510 U.S. 163, 179–81, 114 S.Ct. 752, 762, 127 L.Ed.2d 1 (1994), *citing United States v. Mabe*, 33 MJ 200 (CMA 1991). Consistent with this statutory pronouncement, this Court in *United States v. Grady, supra*, "condemned any references to departmental or command policies made before members charged with sentencing responsibilities." We noted in particular:

What is improper is the reference to such policies before members *in a manner which in effect brings the commander into the deliberation room*. It is the spectre of command influence which permeates such

Sentencing is an individualized process. You do not know and will not be made aware of all of the evidence presented in the Campbell case. Because of the unique nature of the sentencing process, the sentence received by Specialist Campbell is irrelevant to your deliberations regarding SPC Schnitzer. In addition, SPC Campbell and SPC Schnitzer were not charged with identical offenses.
You may consider the fact that Specialist Campbell already pleaded guilty and was con-

a practice and creates "the appearance of improperly influencing the court-martial proceedings" which "must be condemned."

15 MJ at 276 (emphasis added; citation omitted); *see also* RCM 1001(g), Manual for Courts–Martial, United States, 1984.

■ On the other hand, this Court has not always directed reversal of a case where evidence of a command view of an appropriate punishment has been admitted at a court-martial. *E.g., United States v. Sparrow*, 33 MJ 139 (1991); *see generally United States v. Thomas*, 22 MJ 388 (1986). For example, this Court has particularly held that reference by a trial counsel during his sentencing argument to the Navy "Zero Tolerance" drug policy was not plain or reversible error without defense objection. *United States v. Kropf, supra*. In the plain-error context we have focused on the existence of an intent or effect to "interject[ ] the command structure into the members' deliberations[,]" 39 MJ at 109, and the clarity or directness of the reference to command policy. Today we reaffirm this approach.

■ Turning to this case, we note that the court below viewed merely mentioning a coactor's sentence limitation as an attempt to present panel members with the command's view of an appropriate sentence. We disagree as a matter of law because admission of such evidence for an otherwise valid purpose does not *per se* constitute unlawful influence. *See* Mil.R.Evid. 105, Manual, *supra.* Moreover, there is simply no other evidence in this record to support a conclusion that the members were "unambiguously directed," 39 MJ at 110 (Sullivan, C.J., concurring), to conform to command sentencing policies in adjudging punishment.

victed. You may consider the fact that Specialist Campbell may have a motive to lie or to embellish his testimony to receive favorable treatment from the Government for his testimony against Specialist Campbell. You may consider these factors only, however, for the extent to which—if any—they reflect on SPC Campbell's truthfulness. They may not be considered in determining an appropriate sentence for SPC Schnitzer for his crimes.
[Questions to members omitted.]

In this regard we note that defense counsel in his opening statement to the members raised a question as to the coactor's personal interest in testifying against this accused. He referred to that witness' sentence by stating that "[o]ne of his running buddies is going to testify.... He agrees to testify against Schnitzer. Now he's coming in here to reduce his 15–year sentence." Such an argument reasonably suggests that the coactor had an agreement with the convening authority for his testimonial cooperation in return for reduction of his sentence to 15 years.

The now-challenged testimony, however, indicated that the coactor's agreement with the convening authority was for a 28–year sentence limitation. It also showed that this agreement was no longer of any real benefit to the witness because at the time of his trial testimony against this accused, the members in his trial had already awarded him 15 years' confinement. The government evidence contradicted the defense suggestion of a meaningful agreement to testify and more accurately portrayed the speculative nature of any benefit this witness might derive from testifying against *Schnitzer. See United States v. Banker,* 15 MJ 207, 212 (CMA 1983). Its admission, therefore, was for an otherwise valid purpose. *Cf. United States v. Kirkpatrick* and *United States v. Grady, both supra* (invalid purpose).

We also note that it was defense counsel who decided to forgo the proposed protective instruction proffered by the Government concerning this evidence. Indeed, trial defense counsel affirmatively opted for a strategy of relying on the general instructions reminding the members of their sole responsibility to determine the sentence so as not to unduly emphasize the coactor sentencing information in front of the members. In light of the subtle or indirect nature of the command-punishment-policy reference existing in this case, such a defense strategy was reasonable. *See generally United States v. Wilson,* 7 USCMA 713, 715, 23 CMR 177, 179 (1957). While we generally applaud the lower court's

vigor in combating unlawful command influence, we simply find no plain error in the military judge's failure to give a limiting instruction to the members in these circumstances. *See United States v. Kropf, supra; cf. United States v. Grady,* 15 MJ at 276 (obvious policy reference); *United States v. Kirkpatrick,* 33 MJ at 134 (military judge himself instructed members to consider command policy).

We answer the first certified question in the negative and the second in the affirmative.

The decision of the United States Army Court of Criminal Appeals (on reconsideration) as to sentence is set aside. The record of trial is returned to the Judge Advocate General of the Army for return to that court for further review of the sentence under Article 66, UCMJ, 10 USC § 866.

Chief Judge COX and Judge CRAWFORD concur.

EVERETT, Senior Judge, with whom GIERKE, Judge, joins (concurring in the result):

On the basis of my consideration of the record, I agree with the accused and the court below that error occurred at the trial. However, since to a considerable extent the error was invited by the defense, I conclude that this accused is not entitled to relief.[1]

As the majority opinion recites, defense counsel in his opening statement to the members commented in regard to the accused's alleged coactor: "He agrees to testify against Schnitzer. Now he's coming in here to reduce his 15 year sentence." The obvious inference from this remark is that the coactor had been found guilty—either pursuant to a guilty plea or after a contested case. For this accused's counsel to inform the court members of this circumstance would not initially seem favorable to his client's cause. However, it might be an understandable tactic as a prelude for contending that the coactor was the person who really was

---

1. Although defense counsel invited error by his tactics, *see generally United States v. Herrera,* 23 F.3d 74 (4th Cir.1994), I do not believe that those tactics reached the level of ineffective assistance of counsel, which would bring the Sixth Amendment into play.

guilty—as reflected by the conviction—and now was seeking to transfer blame to this accused.

When the coactor—SPC Campbell—took the stand as a government witness, he was asked whether he had pleaded guilty "to the crimes that involved Specialist Schnitzer." He responded in the affirmative—with specific mention of "rape and assault and oral sodomy, kidnapping." This guilty plea, entered at a prior trial, should be treated as a prior consistent statement; and in that event it would not qualify for admission as substantive 801(d)(1)(B) evidence in the Government's case-in-chief. *See* Mil.R.Evid. 801(d)(1)(B), Manual for Courts–Martial, United States (1995 ed.). Likewise, it probably would not be admissible for purposes of rehabilitation of Campbell as a government witness, because the prior consistent statement did not precede the existence of a possible motive to fabricate. However, if during cross-examination of SPC Campbell, defense counsel chose to impeach him by showing a motive to falsify, it might be necessary to question the witness about his guilty plea as a prelude to eliciting testimony on cross-examination that a pretrial agreement had imposed an obligation on SPC Campbell's part to provide certain testimony for the Government. Even then, it is doubtful that the defense would have had occasion to offer evidence concerning the specific sentence of 28 years to which the convening authority had agreed as a ceiling.[2]

My point is that no basis existed for the Government to introduce such evidence as part of its case-in-chief on guilt or innocence. At best—and only in light of the opening statement of defense counsel—trial counsel might be entitled to present an anticipatory rebuttal by asking such questions as: "Do you have any agreement with the convening authority or any one else in the Government that your sentence will be reduced in return

for your testimony?" or "Do you have any reason to believe that your sentence will be reduced in return for your testimony here today?"

Were it not for the opening statement by civilian defense counsel, I probably would apply the doctrine of plain error to reception of this evidence and then would seek to determine whether this plain error had prejudiced Schnitzer with respect to the guilty findings or the sentence. However, under the unique circumstances here, I am reluctant to hold that, prior to findings, the military judge was obligated on his own initiative to exclude the evidence as to Campbell's guilty plea and sentence or to give a curative instruction with respect thereto.

Did such an obligation arise after findings and prior to sentence? The military judge must have been concerned on this point for he proposed a curative instruction. This caution on his part was appropriate, for the lower appellate court has concluded that the court-martial that tried appellant would never have adjudged a 29–year sentence for Schnitzer if they had not learned that his coactor Campbell had been sentenced to 28 years' confinement.

Regardless of this conclusion—which seems quite logical—I cannot justify giving any relief now to Schnitzer. Effect must be given to the fact that, in preparing sentencing instructions, the military judge did propose to give the members an instruction designed to preclude misapplication of their knowledge of Campbell's adjudged sentence.[3] Defense counsel's specific objection to such an instruction was not a totally irrational choice. From a tactical standpoint counsel sometimes prefer for the judge not to mention a matter that court members should disregard—such as failure of an accused to take the stand. The assumption is that giving the instruction might call attention to facts that otherwise would be disregarded.

---

**2.** Conceivably defense counsel might have wished to elicit this information in order to show with greater precision that the government witness was testifying in a certain way as a *quid pro quo* for receiving favorable sentence consideration from the convening authority.

**3.** In my view, the proposed instruction itself was not flawed. For example, I do not grasp why

the instruction would advise the court members: "You may consider the fact that Specialist Campbell already pleaded guilty and was convicted." In my view this "fact" is irrelevant in determining a proper sentence for Schnitzer.

Nonetheless, under the doctrine of invited error, the choice made by qualified defense counsel must be honored.

My basic point is that defense counsel, an experienced lawyer, made various tactical choices during the trial; and to the extent that those choices allowed consideration by the court-martial members of otherwise inadmissible matters, Schnitzer has no complaint on appeal. Thus, I concur in the result with the majority opinion.