*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

————————

### UNITED STATES
Appellee

**v.**

### Tyler WASHINGTON, Private
United States Army, Appellant

**No. 19-0252**
Crim. App. No. 20170329

Argued January 15, 2020—Decided May 29, 2020

Military Judge: Deidra J. Fleming

For Appellant: *Captain Zachary A. Gray* (argued); *Lieutenant Colonel Tiffany D. Pond, Major Jack D. Einhorn, Major Benjamin A. Accinelli*, and *Captain Catherine E. Godfrey* (on brief); *Lieutenant Colonel Todd W. Simpson.*

For Appellee: *Captain Christopher T. Leighton* (argued); *Colonel Steven P. Haight*, *Lieutenant Colonel Wayne H. Williams*, and *Major Hannah E. Kaufman* (on brief).

Judge MAGGS delivered the opinion of the Court, in which Judges RYAN, OHLSON (except for Part II.B.), and SPARKS, joined. Judge OHLSON filed a separate opinion, concurring in part and dissenting in part. Chief Judge STUCKY filed a separate dissenting opinion.

————————

Judge MAGGS delivered the opinion of the Court.

A general court-martial with enlisted members found Appellant guilty, contrary to his pleas, of two specifications of abusive sexual contact in violation of Article 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920 (2012). The military judge merged the two specifications for sentencing. The court-martial sentenced Appellant to confinement for thirty days and a bad-conduct discharge. The convening authority approved the sentence as adjudged. The United States Army Court of Criminal Appeals (ACCA) affirmed the findings and sentence in a summary order.

We granted review to determine whether the military judge abused her discretion by permitting a member of Ap-

pellant's unit to testify about training that Appellant received as part of the Army's Sexual Harassment/Assault Response and Prevention (SHARP) program.[1] We resolve this issue by assuming, without deciding, that the military judge erred in admitting the evidence. We then consider whether the assumed error harmed Appellant based on the factors that we have used in *United States v. Kohlbek*, 78 M.J. 326, 334 (C.A.A.F. 2019), and other cases for assessing whether the erroneous admission of evidence is prejudicial. We conclude that any error in this case did not cause material prejudice to the substantial rights of Appellant.

## I. Background

### A. The Sexual Contacts

On September 17, 2016, after dinner at a restaurant with other soldiers, Appellant and Private First Class (PFC) AF returned to PFC AF's barracks bedroom. They then began to engage in consensual activity, including kissing and removing some items of clothing. But when Appellant became more aggressive, PFC AF raised her arms against her chest and stopped kissing Appellant. PFC AF told Appellant "stop" and "I am uncomfortable with that" three times. Appellant, however, did not stop. He covered PFC AF's mouth with his hand, began kissing her breasts and stomach, and moved his head down between her legs, kissing her genital region over her pants.

Specialist (SPC) Brandon Thomson, who was sitting in an adjacent room, heard Appellant say something like "[s]hut up[;] [s]top talking," or "[s]hush; don't say anything." Concerned, SPC Thomson knocked on the bedroom door. Appellant answered the door while pulling up his pants. Appellant asserted that "nothing bad" had happened. SPC Thomson noticed PFC AF reach for her phone as she sat on the bed and then heard an alert from his phone. He left the door, checked his phone, and found text messages from PFC AF saying "Help" and "I told him to stop and he didn't." SPC

---

[1] The granted issue is: "Whether the military judge abused her discretion by permitting the unit's SHARP representative to testify that 'when a person says "no" it means stop, walk away.'"

Thomson returned to the room and found PFC AF crying. Appellant again denied that anything improper had occurred. SPC Thompson and PFC AF then drove Appellant home.

Two hours later, PFC AF formally reported the assault. At the advice of the Army Criminal Investigative Service (CID), PFC AF sent Appellant a text message asking Appellant why he did not stop when she asked him to stop. Appellant apologized and responded with comments like "I thought the [sic] was one of those like keep going moment [sic] sorry" and "I thought that was one of those moments when the person says stop but they want you to keep going. Been with people like that before sorry."

## B. The Trial

Appellant was charged with two specifications of abusive sexual contact. The Government called PFC AF, who testified as to most of the foregoing facts. Defense counsel, in cross-examining PFC AF, asked questions suggesting that Appellant might have made a mistake of fact about whether she had consented to the sexual contact. For example, defense counsel inquired repeatedly about how PFC AF did or did not manifest her lack of consent during the encounter. Referring to Appellant's knowledge after the encounter was over, defense counsel specifically asked PFC AF: "Private Washington [i.e., Appellant] did not know anything was wrong?" PFC AF answered that he did not.

In a subsequent Article 39(a), UCMJ, 10 U.S.C. § 839(a), session, trial counsel informed the military judge that the Government wished to rebut trial defense counsel's suggestion that Appellant had made a mistake of fact. Trial counsel indicated an intent to call Sergeant First Class (SFC) Wilfredo Rivera to testify about SHARP training that Appellant had received six days before his encounter with PFC AF. Trial defense counsel confirmed the defense's intent to request a mistake of fact instruction but objected to SFC Rivera's testimony.[2] Trial defense counsel argued that the tes-

---

[2] Trial defense counsel had already objected to SFC Rivera's testimony in a pretrial motion in limine, arguing that any references to SHARP training should be excluded because such testi-

timony was not relevant and that it was likely to confuse the members because they might "transfer that the SHARP [training] is the standard" for consent. The military judge overruled Appellant's objection, finding the proffered evidence relevant under Military Rule of Evidence (M.R.E.) 401 and not excludable under M.R.E. 403. The military judge promised to give curative instructions that would address trial defense counsel's concerns about the members mistaking the SHARP training for the legal standard for consent, including "instructions about reasonable doubt and mistake of fact and the elements." Trial defense counsel did not argue, and the military judge did not consider, the possibility that admission of the evidence regarding SHARP policies might violate the prohibition in Article 37, UCMJ, 10 U.S.C. § 837, against unlawfully attempting to influence a court-martial.

SFC Rivera testified that Appellant participated in a company-level training class on the issue of consent during the week preceding the assault. The training included a slide on the topic of withdrawn consent and guidance on what to do when a person says "no" during a sexual encounter. SFC Rivera testified about the slide, indicating that the takeaway was that when one party says "no," it means the other should "stop, walk away."

SFC Rivera testified that Appellant's unit had been "smoked" (Army slang for being required to do intense physical training) for three hours immediately prior to the SHARP training. He further testified that the unit leadership made sure that the unit members stayed awake during training and that at least some of the unit members participated in the training. SFC Rivera testified that he asked Appellant to read aloud the text of one of the slides in the

---

mony was not relevant, was likely to confuse the members, and would waste the court's time. The Government responded that the motion was not ripe because it did not plan to introduce SFC Rivera's testimony unless the defense triggered it at trial by raising the defense of mistake of fact as to consent. The military judge declined to rule on the issue until it arose at trial, where she would be "in a much better position to know what the actual facts are."

presentation. The record, however, contains no additional testimony about whether Appellant paid attention to the training, understood its content, or later remembered any of it. SFC Rivera, who led the session, testified that he could not remember the scenarios that were discussed.

During an Article 39(a), UCMJ, session after the close of the evidence on findings, the military judge informed counsel that she would read the standard instructions for the defense of mistake of fact as to consent. These instructions did not specifically mention SFC Rivera, his testimony, or SHARP policy. When prompted for any requests for additional or tailored instructions, the defense responded, "[n]one for the defense, Your Honor."

During closing arguments, defense counsel stressed that the "issue at hand is whether Private Washington [i.e., Appellant] had a mistake of fact as to consent." Defense counsel drew the members' attention to Appellant's youth and inexperience and argued that Appellant was mistaken because PFC AF did little to overtly manifest her lack of consent. On rebuttal, trial counsel addressed Appellant's mistake of fact defense by advising the members to "go back and look at the judge's instruction." Trial counsel also reminded the panel that Appellant had recently received training "about the importance of consent, about the importance of listening to other people if they say 'no' or 'stop' or express discomfort in a sexual situation." Trial counsel further argued that "any sort of mistaken belief was not honest and was not reasonable." Trial counsel did not cite or quote any SHARP standards.

## II. Discussion

Appellant argues that the military judge abused her discretion in admitting SFC Rivera's testimony about the SHARP training. He asserts that the evidence should have been excluded under M.R.E. 401 because it was irrelevant, under M.R.E. 403 because it was confusing, and under Article 37, UCMJ, because it was a form of unlawful command influence. We do not reach the merits of Appellant's contentions. Even if we assume (without deciding) that the military judge abused her discretion in admitting SFC Rivera's testimony, the error was harmless in this case.

A. Prejudice

Under Article 59(a), UCMJ, 10 U.S.C. § 859(a), and M.R.E. 103(a), the Government has the burden to persuade us that the erroneous admission of evidence did not materially prejudice the substantial rights of Appellant. *United States v. Flesher*, 73 M.J. 303, 318 (C.A.A.F. 2014). "For non-constitutional evidentiary errors, the test for prejudice 'is whether the error had a substantial influence on the findings.'" *Kohlbek*, 78 M.J. at 334 (quoting *United States v. Fetrow*, 76 M.J. 181, 187 (C.A.A.F. 2017)). "In conducting the prejudice analysis, this Court weighs: (1) the strength of the Government's case, (2) the strength of the defense case, (3) the materiality of the evidence in question, and (4) the quality of the evidence in question." *Id.* (citations omitted) (internal quotation marks omitted).

1. The Strength of the Government's Case

The Government's case was strong. The Government's principal witness was PFC AF. In her testimony, PFC AF described the events of the evening in question and provided evidence establishing the elements of the offenses of which Appellant was found guilty. Her testimony also countered the possibility that Appellant might have made an honest and reasonable mistake about whether she had consented. She testified that she told Appellant to "stop" several times and that she informed him, "I'm uncomfortable with this." PFC AF also testified that Appellant covered her mouth with his hand when she objected to his conduct. Her memory of the incident was not at issue because she reported the incident as soon as it happened.

SPC Thomson provided corroborating evidence. He described what he heard outside the room in which the incident occurred and what he saw the two times that he went to the door of the room. He also testified about the distressed messages that he received just after the incident. Although he did not see the conduct at issue, he observed the parties' demeanor immediately afterward. In addition, the Government also introduced Appellant's own text messages to PFC AF. In these text messages, Appellant appeared to agree with PFC AF's description of what happened. In one of

them, Appellant admitted that PFC AF told him to stop but he kept going.

## 2. The Strength of the Defense Case

The defense case in comparison was much weaker. Appellant did not call witnesses. The defense strategy instead was to use cross-examination to impeach PFC AF and SPC Thomson and to raise the issue of mistake of fact. Trial defense counsel was diligent in this effort. On cross-examination, PFC AF agreed that Appellant had not pinned her down. She agreed that before Appellant had put her hand over her mouth, she had informed him that the reason she did not want oral sex was that she did not want to be loud. She further agreed that she did not close her legs and that Appellant did not take off her pants, put his hands in her pants, or reach for her belt or panties. SPC Thomson further testified that Appellant and PFC AF were alone together for twenty to thirty minutes before he heard Appellant tell PFC AF to "[s]hut up." Appellant argues that this evidence would have been strong enough, absent the SHARP testimony, to raise reasonable doubt about his guilt. The court-martial, he asserts, might have concluded that PFC AF agreed to engage in some sexual contact but merely objected to Appellant's desire for oral sex, which she agrees he did not pursue after she objected.

In our view, however, the cross-examination did not appreciably weaken the Government's proof that Appellant had committed the offenses at issue and that any mistaken belief as to consent would not have been reasonable. Putting evidence of the SHARP training completely aside, PFC AF's testimony that she repeatedly told Appellant to stop and that he kept going, which was corroborated by his own text messages, ruled out the possibility that Appellant had an honest and reasonable mistake of fact about whether she consented to further sexual conduct. The first two factors of the prejudice analysis thus favor the Government.

## 3. The Materiality and Quality of the Evidence in Question

After considering the strength of the Government's case and the strength of the defense case, the final two factors of the prejudice analysis are the materiality and quality of the

evidence in question. *Kohlbek*, 78 M.J. at 334. In examining these factors, we essentially are assessing how much the erroneously admitted evidence may have affected the court-martial. In doing so in the instant case, we conclude that Appellant did not suffer material prejudice.

When assessing the materiality and quality of the evidence, this Court considers the particular factual circumstances of each case. For example, we have previously considered such things as the extent to which the evidence contributed to the government's case, *see, e.g.*, *United States v. Hursey*, 55 M.J. 34, 36 (C.A.A.F. 2001) (concluding that an error was harmless in part because the record was "replete with admissible evidence" that was similar); the extent to which instructions to the panel may have mitigated the error, *see, e.g., United States v. Baumann*, 54 M.J. 100, 105 (C.A.A.F. 2000) (concluding that an error was harmless in part because the military judge gave "extensive instructions on the proper use" of the evidence); *see also United States v. Eslinger*, 70 M.J. 193, 196–97 (C.A.A.F. 2011); the extent to which the government referred to the evidence in argument, *see, e.g., United States v. Brooks*, 26 M.J. 28, 29 (C.M.A. 1988) (concluding that an error was harmless in part because the "trial counsel did not refer to the objectionable evidence in his argument"); and the extent to which the members could weigh the evidence using their own layperson knowledge, *see, e.g.*, *United States v. Walker*, 42 M.J. 67, 74 (C.A.A.F. 1995) (concluding that an error was harmless in part because the Court was "confident that the members—using their common sense and everyday experiences—placed this evidence in a proper perspective and did not afford it substantial weight"). While not exhaustive, this Court has found these and similar considerations useful in evaluating the final two *Kohlbek* factors.

Weighing the relevant factual circumstances in the instant case, we conclude that Appellant was not prejudiced by the SHARP testimony even if the military judge erred in admitting it at trial. In reaching this conclusion, we note the following points: the evidence contributed little to the Government's case because, as even Appellant argues, the training did not directly concern the defense of mistake of fact as to consent; the military judge correctly instructed the mem-

bers on the law; the trial counsel did not unduly exploit the questionable evidence during his closing arguments but instead tailored his arguments in accordance with the military judge's instructions on the law; and we are confident that the panel placed the evidence in its proper perspective and did not give it undue weight.

In regard to this last point, several facts are key to our conclusion. First, Appellant and his unit received the SHARP training after being "smoked" for several hours, bringing into question the level of alertness of Appellant. Second, SFC Rivera testified that the SHARP presentation included seventy slides and that only one of those slides contained any information about consent, bringing into question the degree to which this information would have stood out in Appellant's mind. And third, the Government presented no evidence to the members at trial addressing these issues, i.e., indicating whether Appellant paid attention during the SHARP training or retained any of the information presented in that one single slide. In fact, SFC Rivera, the SHARP trainer, conceded on the witness stand that even he could not recall what types of scenarios he discussed when he explained consent to Appellant's unit. Upon learning that the instructor himself could not remember the content of the SHARP presentation, the members were even less likely to conclude that Appellant did so.

Accordingly, considering the strength of the Government's case, the strength of the defense case, and the materiality and quality of the evidence, we conclude that the Government has met its burden of persuading us that even if the admission of the SHARP training evidence was error, that error did not materially prejudice the substantial rights of Appellant.

## B. Additional Discussion

In deciding this case, the Court assumes that the military judge erred in admitting SFC Rivera's testimony about the SHARP training under M.R.E. 401. But this does not mean that the Court also assumes that everything Appellant has argued with respect to M.R.E. 403 and Article 37, UCMJ, is true.

M.R.E. 403 provides in relevant part that the "military judge may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . confusing the issues." In addition to arguing that the evidence was not relevant as required by M.R.E. 401, Appellant also argues that the military judge should have excluded the SHARP testimony because it likely confused the members about the legal standard and was thus prejudicial even if relevant. But there was little danger that the testimony would confuse the members in this way. No one suggested at trial that the members should decide the case according to what was said at the SHARP training. In addition, the members agreed in voir dire that they would follow the military judge's instructions on the law, the military judge properly instructed the members on the law, and counsel for both sides made arguments in accordance with the military judge's instructions on the law. *Cf. United States v. Ellerbrock*, 70 M.J. 314, 320 (C.A.A.F. 2011) ("Confusion of the issues was also unlikely, given that the theory of relevance was relatively straightforward. And with proper instructions from the military judge on how the members could use this evidence [of a prior affair], there is little concern that the members would have been misled.").

Appellant also argues that SFC Rivera's testimony should have been excluded because, under the circumstances, its admission constituted unlawful command influence in violation of Article 37, UCMJ. At the time of the offense and trial, Article 37(a), UCMJ, provided in relevant part that "[n]o person subject to this chapter may attempt to coerce or, by any unauthorized means, influence the action of a court-martial." 10 U.S.C. § 837(a) (2018). A party alleging actual unlawful command influence "must (1) show facts which, if true, constitute unlawful command influence; (2) show that the proceedings were unfair; and (3) show that unlawful command influence was the cause of the unfairness." *United States v. Biagase*, 50 M.J. 143, 150 (C.A.A.F. 1999). The threshold for this showing requires more than mere allegation or speculation. *Id.* Appellant contends that introducing evidence of the SHARP training violated this prohibition because the members may have believed that they should follow the SHARP policies endorsed by the command rather

than the legal rules provided by the military judge. This Court has "condemned references to departmental or command policies made before members." *United States v. Kropf*, 39 M.J. 107, 109 (C.M.A. 1994). But while certainly not a best practice, and one fraught with peril, such references do not, without more, constitute unlawful command influence, and Appellant has not demonstrated "some evidence" of an Article 37, UCMJ, violation here. *Biagase*, 50 M.J. at 150 (citation omitted) (internal quotation marks omitted). The SHARP training was not done for the purpose of influencing the trial, no one argued at trial that the SHARP training reflected the law, the military judge properly instructed the members, and the members agreed that they could follow the military judge's instructions. And for the same reasons, Appellant has not made the showing required to establish apparent unlawful command influence—that "an objective, disinterested observer, fully informed of all the facts and circumstances, would harbor a significant doubt about the fairness of the proceeding." *United States v. Boyce*, 76 M.J. 242, 249 (C.A.A.F. 2017) (citation omitted) (internal quotation marks omitted).

### III. Conclusion

For the foregoing reasons, the judgment of the United States Army Court of Criminal Appeals is affirmed.

Judge OHLSON, concurring in part and dissenting in part.

I write separately only as to Part II.B. of the majority's opinion. Simply stated, I believe the introduction of testimony or other evidence regarding the Army's Sexual Harassment/Assault Response and Prevention (SHARP) program (and, of course, its analogues in the other military services) poses an especially grave risk of injecting unlawful command influence into court-martial proceedings pertaining to sexual assault offenses. *See, e.g.*, *United States v. Grady*, 15 M.J. 275, 276 (C.M.A. 1983) ("We have long condemned any references to departmental or command policies made before members" which "in effect brings the commander into the deliberation room." (citations omitted)). Thus, under typical circumstances—and using the proper de novo standard of review, *United States v. Barry*, 78 M.J. 70, 77 (C.A.A.F. 2018) (citing *United States v. Salyer*, 72 M.J. 415, 423 (C.A.A.F. 2013))—I would be receptive to Appellate defense counsel's argument that unlawful command influence occurred in this case because the SHARP representative testified before the panel members that he had instructed Appellant about the command policy that "when a person says, 'No' [to sexual contact,] it means 'stop, walk away.' "

In the instant case, however, the key issue before this Court is whether the military judge abused her discretion in admitting the SHARP testimony. *United States v. Washington*, 79 M.J. 257 (C.A.A.F. 2019) (order granting review). Under the attendant circumstances, I cannot conclude that she did so based on the objection raised at the court-martial. Specifically, trial defense counsel argued to the military judge that "discussing SHARP in general is going to create unfair prejudice and confusion for the members." As can be seen, trial defense counsel did not explicitly raise any concern about unlawful command influence. Moreover, I do not believe that an unlawful command influence argument is inherent to defense counsel's stated objection at trial. Therefore, to put it plainly, the cogent argument Appellant now makes before this Court is not the same argument he made before the military judge. And, as we held in *United States v. Carpenter*, our determination of whether a military judge abused his or her discretion when admitting evidence at trial "is properly based on a military judge's disposition of the

motion submitted to him or her—not on the motion that *appellate* defense counsel now wishes *trial* defense counsel had submitted." 77 M.J. 285, 289 (C.A.A.F. 2018) (citations omitted). Accordingly, I would hold in the instant case that the military judge did not abuse her discretion by failing to intuit a theory of inadmissibility that was not squarely presented at trial, and by deciding the motion only on the grounds actually presented to her.

Chief Judge STUCKY, dissenting.

The majority assumes, correctly, that the Army's Sexual Harassment/Assault Response and Prevention (SHARP) program's training testimony was irrelevant under Military Rule of Evidence (M.R.E.) 401. Nevertheless, the majority holds Appellant was not prejudiced by its admission and thus affirms his conviction. I agree that the evidence was irrelevant and inadmissible, but I do not agree that the Government has met its burden to show that the erroneous admission of the testimony did not prejudice Appellant, and so I respectfully dissent.

In its examination of the final *Kohlbek* factors, *United States v. Kohlbek*, 78 M.J. 326, 334 (C.A.A.F. 2019), the majority misapprehends the danger of irrelevant evidence and minimizes the errors of the military judge. I am not convinced the members realized the irrelevance of the evidence on their own and discounted the testimony.

First, far from being innocent, the irrelevance of the SHARP testimony exacerbated its potential prejudice. Irrelevant evidence can be highly prejudicial when it invites the members to base their findings on the wrong information. That is the danger here. While the majority admits that the SHARP training does not concern whether Appellant's mistake was reasonable, the Government introduced the evidence for precisely that purpose. In closing, trial counsel argued that the members should consider the training "number one as to whether [Appellant's] mistake was reasonable." This was trial counsel's primary argument against the mistake of fact defense. The fact that it was irrelevant to the mistake of fact, yet so closely related to it, is why it is so prejudicial.

Second, the military judge gave the standard mistake of fact instruction, but, despite a promise to the contrary, did not instruct the members that SHARP was not the legal standard for consent, or how they should consider the SHARP testimony in determining the reasonableness of any mistake by Appellant as to consent. By allowing the testimony, and not clarifying it, she was implicitly telling the members that SHARP training fell within the "education" that she instructed them to consider when evaluating the

mistake of fact. The majority assumes SHARP was not relevant training, but nonetheless states that the military judge's instructions were correct. Although the instruction was a technically correct description of the mistake of fact defense in general, the failure of the military judge to place the SHARP training evidence in perspective rendered any possible benefit to Appellant nugatory.

Finally, considering the above, I am not convinced the members, on their own, realized that the SHARP training was irrelevant as to whether Appellant's supposed mistake of fact was reasonable. Trial counsel encouraged, and the military judge allowed, the members to consider evidence irrelevant to Appellant's alleged mistake. Since I do not believe the Government met its burden to show that the introduction of the SHARP testimony was harmless, I respectfully dissent.