UNITED STATES, Appellee

v.

Enrique BARRAZAMARTINEZ, Lance Corporal
U.S. Marine Corps, Appellant

No. 02-0865

Crim. App. No. 200101575

United States Court of Appeals for the Armed Forces

Argued February 5, 2003

Decided March 26, 2003

GIERKE, J., delivered the judgment of the Court, in which
CRAWFORD, C.J., joined. EFFRON, J., filed a separate opinion
concurring in the result. BAKER, J., filed a separate dissenting
opinion, in which ERDMANN, J., joined.

Counsel

For Appellant: Lieutenant Michael J. Navarre, JAGC, USNR
(argued); Lieutenant Glenn Gerding, JAGC, USNR (on brief).

For Appellee: Lieutenant Lori McCurdy, JAGC, USNR (argued);
Colonel R. M. Favors (on brief).

Military Judge: S. A. Folsom

**This opinion is subject to editorial correction before final publication.**

Judge GIERKE delivered the judgment of the Court.

A military judge sitting as a general court-martial convicted Appellant, pursuant to his pleas, of conspiracy to wrongfully import marijuana, and wrongfully importing marijuana, in violation of Articles 81 and 112a, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. §§ 881, 912a (2002), respectively.  A panel of officers sentenced Appellant to a dishonorable discharge, confinement for 11 years, forfeiture of all pay and allowances, and reduction to the lowest enlisted grade.  In accordance with a pretrial agreement, the convening authority suspended all confinement in excess of 78 months but otherwise approved the sentence.  The Court of Criminal Appeals affirmed the findings and sentence in an unpublished opinion. This Court granted review of the following issues:

I

> WHETHER TRIAL COUNSEL COMMITTED PLAIN ERROR WHEN HE REFERRED
> TO AMERICA'S "WAR ON DRUGS" AND CALLED APPELLANT A "TRAITOR"
> DURING HIS PRESENTENCING ARGUMENT BEFORE MEMBERS.

II

> WHETHER APPELLANT'S SENTENCE TO ELEVEN YEARS' CONFINEMENT
> AND A DISHONORABLE DISCHARGE IS HIGHLY DISPARATE COMPARED TO
> HIS ALLEGED CO-CONSPIRATOR'S SENTENCE OF FOUR YEARS'
> CONFINEMENT AND A BAD-CONDUCT DISCHARGE.

For the reasons set out below, we affirm.

## I. Factual Background

At the time of the offenses, Appellant was stationed at Marine Corps Air Station Miramar, California.  In early February 2000, Appellant's cousin introduced him to a civilian named Beto. Beto offered Appellant $1,500 to go to Mexico and bring back a

pickup truck loaded with marijuana.  Appellant agreed, seeing an opportunity to earn some money for his parents and sister.

On February 11, 2000, Beto notified Appellant that the truckload of marijuana was ready.  Beto told Appellant that it would be better if Appellant had someone with him on the trip from Mexico to the United States.  Appellant asked Lance Corporal (LCpl) Martinezgarcia to accompany him.  According to Appellant, LCpl Martinezgarcia did not know the purpose of the trip.

On the same day, Appellant, Beto and LCpl Martinezgarcia drove to Tijuana, Mexico, where Beto delivered a Volkswagen pickup truck to Appellant.  Appellant knew that marijuana was hidden in the truck, but he did not know its quantity or exact location in the truck.  When Appellant crossed the border, customs agents detained him and LCpl Martinezgarcia, and they discovered 99 pounds[*] of marijuana concealed in the truck's right rear fender panel.

> During his sentencing argument, the trial counsel argued:
>
> We in America are engaged in a war on drugs.  You have heard from the President.  You heard from the agents, and customs, that borders are being flooded. . . .
>
> The drug cartels in Mexico are bringing drugs in this country and polluting our population.  They're making money off our weak individuals.  They do it because people like [Appellant] carry the drugs across the border.
>
> Now as warriors you know you can always fight the battle and fight the enemy on the battlefield.  But true tacticians know you win the war by knocking out the logistics.

---

[*] Although Appellant was charged with importing 99 pounds of marijuana and admitted importing 99 pounds during the plea inquiry, a U.S. Customs Service special agent testified that the 99 pounds included the tape and wrapping, and that the actual weight of the marijuana was approximately 85 pounds.

Trial counsel referred to the maximum confinement authorized for Appellant's offenses (30 years), and he argued as follows:

> The reason thirty years is authorized is because it's worth a lot.  It's worth a lot of punishment because it is the type of activity we need to deter.  Not just one individual but anyone who would think about doing it, tarnishing the Marine Corps' image of bringing drugs across this border. Almost a traitor to our country in that he's bringing in drugs when we are trying, as a nation, to stop them from coming in.

Trial counsel concluded his argument by asking the court members to impose confinement for 15 years.  Appellant's defense counsel did not object to any of the trial counsel's sentencing argument.

LCpl Martinezgarcia, Appellant's co-conspirator, was charged with conspiring with the Appellant, importing and possessing marijuana, and making a false official statement about his involvement with Appellant, in violation of Articles 81 and 112a, and Article 107, UCMJ, 10 U.S.C. § 907 (2002).  His case initially was referred to trial jointly with Appellant's, but the cases were later severed.  LCpl Martinezgarcia pleaded not guilty, but he was convicted and sentenced to a bad-conduct discharge, confinement for four years, total forfeitures, and reduction to the lowest enlisted grade.

## II. Discussion: Improper Argument (Issue I)

### A.  Reference to War on Drugs

Appellant asserts that it was plain error for the trial counsel to introduce the Commmander-in-Chief's war on drugs into the deliberation room.  The Government argues that it was not plain error to refer to the war on drugs, that America's war on drugs is common knowledge, and that mentioning it does not bring command sentencing policy into the deliberation room.

In light of the defense counsel's failure to object, we review the trial counsel's argument for plain error. See United States v. Powell, 49 M.J. 460 (C.A.A.F. 1998); United States v. Kropf, 39 M.J. 107, 108-09 (C.M.A. 1994). Appellant has the burden of persuading this Court that there was plain error. Powell, 49 M.J. at 464.

Regarding sentencing arguments, Rule for Courts-Martial 1001(g) provides:

> Trial counsel may not in argument purport to speak for the convening authority or any higher authority, or refer to the views of such authorities or any policy directive relative to punishment or to any punishment or quantum of punishment greater than that court-martial may adjudge.

Reference to departmental or command policies can create the appearance of unlawful command influence. See United States v. Grady, 15 M.J. 275, 276 (C.M.A. 1983). Reference to such policies "is an area in which trial counsel are well advised to tread lightly." Kropf, 39 M.J. at 109. On the other hand, it is proper for a trial counsel to comment on "contemporary history or matters of common knowledge within the community." Id. at 108.

With respect to trial counsel's reference to the war on drugs in this case, we agree with the Government that it is a matter of common knowledge. Furthermore, the trial counsel made no reference to either the Commander-in-Chief's or any other commander's expectations regarding Appellant's punishment. Thus, with respect to this aspect of the trial counsel's argument, we hold that there was no plain error.

## B. Appellant as "Almost a Traitor"

A trial counsel is charged with being a zealous advocate for the Government.  United States v. Nelson, 1 M.J. 235, 238 (C.M.A. 1975).  During sentencing arguments, "the trial counsel is at liberty to strike hard, but not foul, blows."  United States v. Baer, 53 M.J. 235, 237 (C.A.A.F. 2000).  Trial counsel may not, however, "seek unduly to inflame the passions or prejudices of the court members."  United States v. Clifton, 15 M.J. 26, 30 (C.M.A. 1983).

Trial counsel's reference to Appellant as "almost a traitor" gives us pause.  The term "traitor" is particularly odious, particularly in the military community.  On the other hand, trial counsel used the term only once, and he qualified it with the word "almost."  The term is defined as: "1. One who betrays another's trust or is false to an obligation or duty; 2. One who commits treason."  MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 1252 (10th ed. 1993).  Treason is defined as "the betrayal of a trust; treachery."  Id. at 1257-58.  It was fair comment on the evidence for trial counsel to argue that Appellant had betrayed the trust placed in him as a member of the United States Marine Corps. Defense counsel did not consider the argument sufficiently offensive to warrant an objection.  See Nelson, 1 M.J. at 238 n.6.  While we do not condone the trial counsel's use of this potentially inflammatory term, we hold that Appellant has not carried his burden of persuading this Court that the sentencing argument characterizing him as "almost a traitor" was plain error.

### III. Discussion: Highly Disparate Sentences (Issue II)

In United States v. Lacy, 50 M.J. 286, 288 (C.A.A.F. 1999), this Court set out a three-part test for resolving claims of disparate treatment. When reviewing a decision of a Court of Criminal Appeals, we limit our review to three questions of law:

> (1) whether the cases are "closely related"; . . . (2) whether the cases resulted in 'highly disparate' sentences; and (3) if the requested relief is not granted [by the court below] in a closely related case involving a highly disparate sentence, whether there is a rational basis for the differences between or among the cases.

Our standard of review is "whether a Court of Criminal Appeals abused its discretion or caused a miscarriage of justice in carrying out its highly discretionary 'sentence appropriateness' role." United States v. Durant, 55 M.J. 258, 260 (C.A.A.F. 2001).

Appellant asserts that the court below erred by not granting him sentence relief in light of the significantly less severe sentence of his co-conspirator, LCpl Martinezgarcia. The Government does not dispute that the two cases are closely related and that the sentences are highly disparate. The Government argues, however, that the court below did not abuse its discretion by affirming Appellant's sentence because there was a rational basis for the disparity between Appellant's sentence and that of his co-conspirator.

The court below concluded that the two cases are closely related and that the sentences are highly disparate, but it concluded that the Government had carried its burden of showing a rational basis for Appellant's more severe sentence. The lower court reasoned as follows:

7

> Appellant was the one who entered into a criminal conspiracy, agreed to drive the truck containing approximately 99 pounds of concealed marijuana for resale, and then drove it from Mexico into the United States in order to earn $1500.  It was he who chose to involve Martinezgarcia in this criminal enterprise because the mastermind of the operation, a drug wholesaler known only as "Beto," suggested that the undertaking would likely be more successful if someone else was in the pickup truck as they crossed into the United States . . . . He admitted that, but for his invitation to take part, Martinezgarcia would never have been in the truck . . . . Indeed, according to Appellant, Martinezgarcia was unaware of the fact that there was any marijuana in the truck . . . . We conclude, therefore, that there are rational and cogent reasons for the apparent disparity in the sentences imposed on Appellant and his co-actor.

We agree with the analysis of the court below.  Accordingly, we hold that the court below did not abuse its discretion or cause a miscarriage of justice by affirming Appellant's sentence.

## IV. Decision

The decision of the United States Navy-Marine Corps Court of Criminal Appeals is affirmed.

United States v. BarrazaMartinez, No. 02-0865/MC

Effron, Judge (concurring in the result):

Appellant was represented in this case by both civilian and military defense counsel. Appellant's counsel did not object to trial counsel's closing argument. Absent such an objection, in a case that does not involve an allegation of ineffective assistance of counsel, the burden is on Appellant to demonstrate plain error under United States v. Powell, 49 M.J. 460 (C.A.A.F. 1998). Under Powell, Appellant must demonstrate that: (1) there was an error; (2) the error was plain or obvious; and (3) the error materially prejudiced a substantial right. Id. at 463-65. Both the lead opinion and the dissenting opinion set forth reasonable interpretations of trial counsel's closing argument. In that context, Appellant has not met his burden of demonstrating under the second prong of Powell that any error was so obvious that the military judge should have intervened in the absence of objection by defense counsel.

BAKER, Judge, with whom ERDMANN, Judge, joins (dissenting):

Although I agree with the lead opinion's legal framework, I respectfully dissent from its application of that framework to these facts.

The lead opinion concludes that Appellant has not carried his burden of persuading this court that trial counsel's sentencing argument was plain error. In reaching this conclusion the lead opinion relies on three arguments. First, the war on drugs is common knowledge. Second, trial counsel only referred to Appellant as a traitor once, and when he did so the term was qualified by the word "almost." Third, "treason" is defined, inter alia, as "the betrayal of a trust." _ M.J. (6) Thus, trial counsel's reference to Appellant as "almost a traitor" was "fair comment on the evidence" because "Appellant had betrayed the trust placed in him as a member of the United States Marine Corps." Id. In essence, the lead opinion argues, trial counsel used the word traitor in its colloquial and descriptive sense, and not in its constitutional sense to describe someone who commits treason, like Benedict Arnold.

I disagree. I think the better view is that trial counsel was appealing to the members' sense of duty and patriotism as Marines by suggesting that Appellant's

offenses were the equivalent of treason as used in the constitutional sense. To a panel of members sworn to uphold and defend the Constitution, such suggestion, in my view, is inflammatory and runs undue risk of drawing the members unfairly away from the evidence at hand.

This is clear from the context of trial counsel's full argument:

> Now as warriors you know you can always fight the battle and fight the enemy on the battlefield. But true tacticians know you win the war by knocking out the logistics. . . . Now Marines stand for an awful lot of things. We stand for what is right in this country. We defend our borders. We have honor and courage. We don't stand for perfect drug courier and we shouldn't be the type of people that drug couriers should recruit. . . . The reason thirty years is authorized is because it's worth a lot. . . . [The accused is] [a]lmost a traitor to our country in that he's bringing in drugs when we are trying, as a nation, to stop them from coming in. We employ thousands of dollars, millions of dollars in doing that, employing the military to stop the drugs. . . . [H]e tarnished our image. He committed the serious offense against this nation.

First, trial counsel's reference to Appellant as "almost a traitor" comes in the context of war. The "war on drugs" is indeed a matter of common knowledge and a colloquialism for efforts to address the importation and use of drugs in the United States. However, counsel did not limit his argument to the policy metaphor. Rather, he appealed to the members as warriors to do their duty in

this war.  That duty, I infer in the context of a sentencing argument, was to levy harsh punishment.

Second, in his reference to Appellant as "almost a traitor," trial counsel stated, "[Appellant] committed the serious offense against this nation."  This is the language of treason as understood in the Constitution as a crime against the nation.  ("Treason against the United States shall consist only in levying War against them, or in adhering to their Enemies, giving them Aid and Comfort." US Const. art. III, § 3 (emphasis added)).  Nor is this reference a momentary metaphor, it is a central theme in trial counsel's closing argument covering three pages in the record.

Finally, if one adopts the lead opinion's view that trial counsel's argument was fair comment on the evidence because Appellant betrayed a trust, then it is fair comment in any case in which a member of the armed forces commits a common crime.  Any accused within the military justice system would become a traitor for acts of "treason" against "trust placed in [him/her] as a member of the United States [Armed Forces]."  _ M.J. (6).  This does not strike me as an analytic formula suited to upholding a fair and impartial system of military justice.  In a military courtroom, the labeling of an accused as a "traitor" is

3

particularly inflammatory.  Therefore, until this Court overrules United States v. Baer, 53 M.J. 235 (C.A.A.F. 2000), and United States v. Clifton, 15 M.J. 26 (C.M.A. 1983), I would consider such language in the context of a drug trial outside the bounds of fair comment.

Appellant betrayed the trust of the Marine Corps and the public the Marine Corps serves; but Appellant was not on trial for treason against the nation in the war on drugs.  Rather, he was on trial for importing drugs into the United States in the context of a United States effort to stem the tide of drugs referred to as a "war on drugs." We should be confident he was sentenced for the crime for which he was charged and convicted.