OPINION OF THE COURT
MATHEWS, Judge:
The appellant was convicted, in accordance with his pleas, of one specification of failure to go, in violation of Article 86, UCMJ, 10 U.S.C. § 886; one specification of making a false official statement, in violation of Article 107, UCMJ, 10 U.S.C. § 907; and one specification each of wrongful use of cocaine on divers occasions and wrongful use of methamphetamine, both in violation of Article 112a, UCMJ, 10 U.S.C. § 912a. Before this Court, the appellant makes no challenge to the findings, and we affirm them. See Article 66(c), UCMJ, 10 U.S.C. § 866(c).
The appellant was sentenced by officer members to a bad-conduct discharge, confinement for 9 months, and reduction to the grade of E-l. He claims on appeal that the presentencing phase of his trial was prejudi-cially tainted by evidence of unrelated and uncharged misconduct. For the reasons set forth below, we concur and grant relief.

*650
Background

The appellant was assigned to the Primary Care Clinic at the Barksdale Air Force Base hospital in Louisiana. On two occasions in early March 2004, the appellant used illegal drugs provided to him by an off-base acquaintance. As luck would have it, he was required to submit a urine sample for testing the day after his second use. When confronted with the results of that test, he confessed. After his drug use was discovered, the appellant became depressed and one day simply did not go to work. When later questioned about his absence by his first sergeant, the appellant lied, claiming to have had a date in court for a traffic violation. The first sergeant did not believe the appellant’s story, and quickly discovered there was no such court date.
The appellant entered provident pleas to all charges and specifications, and elected to be sentenced by a panel of officers. The court-martial proceeded uneventfully through half of the government’s presentencing ease, with testimony from a law enforcement officer about the prevalence of drugs in the local community and from a toxicologist about the effects of cocaine and methamphetamine. After those witnesses were through, the trial counsel, Captain (Capt) J, called the appellant’s first sergeant, Master Sergeant (MSgt) S, to testify about the appellant’s potential for rehabilitation. The trial quickly began “devolving down” to a point that was not only “absurd,” as the military judge aptly described it, but resulted in prejudicial error.

Improper Sentencing Evidence

The appellant’s trial defense counsel, anticipating the possibility that the government would offer evidence concerning domestic disputes between the appellant and his former wife, made a proper motion in limine to exclude such evidence:
DC [Defense Counsel]: Also, anything, any conduct that was as a result [sic] between [the appellant] and his wife. There is some indication that in the past they have been issued no contact orders and there might have been some threat communicating or any of that stuff. That was not charged and anything like that the defense would request the judge to limit due to uncharged misconduct.
MJ [Military Judge]: Trial counsel, are you planning on trying to bring anything like that in?
TC [Trial Counsel]: Only in rebuttal, your honor.
Such evidence could conceivably have been admissible under Rule for Courts-Martial (R.C.M.) 1001(b)(4), if it directly related to or resulted from the appellant’s offenses; but the trial counsel offered no evidence making such a link. Instead, she chose not to oppose the motion and promised the evidence would not be part of her case-in-chief. Unfortunately, that assurance was apparently overlooked once the members were seated and the presentation of evidence began. Capt J’s first substantive question to MSgt S set the stage for the very evidence trial defense counsel had moved to exclude:
Q: Okay, what we want you to do is tell us a little bit about [the appellant] and your history with [the appellant]?
A: ... I believe [the appellant] first popped up on the radar screen in November [2003] with some issues between him and his ex-spouse. At that time, I guess a friend of his ex-spouse or an individual— DC: I am going to object, I think we are going to get into some issues which were part of my motion in limine in the beginning.
MJ: Counsel?
TC: If he can be more specific as to the objection?
DC: Well, in front of the—I hate to have to keep doing 39(a)[1] session [sic], but you know, I don’t want to get into it in front of the panel members.
MJ: I’ll tell you what, let’s let him answer the question counsel, and if he actually does start to get into them, object immediately and I’ll send the members out.
Military judges are vested with considerable discretion over the mode and order of the presentation of evidence. See, e.g., Mil. R. Evid. 104, 611, 614. See general *651 ly United States v. Rodriguez, 28 M.J. 1016, 1021-22 (A.F.C.M.R.1989), aff'd, 31 M.J. 150 (C.M.A.1990). This discretion, though broad, is not unlimited; it must be exercised in such a manner as to assure a fair trial. United States v. Quintanilla, 56 M.J. 37, 41 (C.A.A.F.2001). The military judge’s “wait and see” approach to the defense objection did little to further this goal. The better decision clearly would have been to allow the trial defense counsel—who had already placed the court on notice that this information could be prejudicial—to make his case out of the presence of the members. Although we do not hold that the military judge abused his discretion by initially denying the trial defense counsel’s request, his decision set the stage for the error that followed.
Capt J may not have anticipated that her initial question to MSgt S would trigger a response involving the appellant’s marital discord. After the military judge’s ruling, however, it could hardly have come as a surprise when the next question brought a similar response:
TC: What was your first contact with [the appellant]?
WIT [Witness]: He was having some conflict between him and his ex-spouse, and her friend or her significant other at that time, we had to issue a no-eontact order—
DC: Object.
The military judge overruled the objection by noting, “all he is saying is that they had to wind up issuing a no contact order. Nothing uncharged on that.”
The military judge erred. The issuance of a no-contact order implies the existence of a volatile situation that the participants cannot be relied upon to resolve peacefully. The language used by MSgt S (“He was having some conflict ...” (emphasis added)), suggested the appellant was the focal point of the problem. Such evidence does not fall within the categories of aggravation evidence permissible under R.C.M. 1001(b)(4): evidence of victim impact, impact on the unit directly and immediately resulting from the offense, or evidence that the victim was singled out because of race, color, religion, national origin, ethnicity, gender, disability, or sexual orientation. Nor does it represent opinion evidence as to the appellant’s performance in the service or potential for rehabilitation, admissible under R.C.M. 1001(b)(5). See United States v. Sheridan, 43 M.J. 682, 684 (A.F.Ct.Crim.App.1995).
Unfortunately, this was not the only improper sentencing evidence to reach the members. Similar examples appear on virtually every page of the testimony of MSgt S, and of the next character witness, Senior Master Sergeant (SMSgt) M. The witnesses testified about a second no-contact order issued to the appellant; about his problems maintaining control of his emotions when dealing with issues relating to divorce, child custody, and child visitation matters; and about the appellant’s financial difficulties, including issues with his car payments, insurance, and rent.[2] The trial counsel even went so far as to offer the appellant’s traffic tickets.[3] Indeed, there was, apparently, no limit to the prosecution’s determination to explore every one of the appellant’s flaws:
Q: What was his uniform like?
A: ... It was not well kept. It was not properly pressed. Boots were not properly shined and so forth.
*652 At no point did Capt J make even a token effort to link the condition of the appellant’s footgear to his drug use or his other misconduct.
The absence of any such connection did not dissuade trial counsel from drilling still further into the minutia of the appellant’s appearance, eliciting testimony that “he didn’t own an iron .... his BDU’s were just— looked like they just came out of the dryer.” The appellant’s trial defense counsel objected frequently, but to no avail. The military judge overruled most of his objections, or sustained them while erroneously informing the members that they could use such evidence “for the very limited purpose” to show “the time the unit has invested in [the appellant] in the past.” [4]
In fact, the Rules for Courts-Martial make no provision for admitting evidence of “the time the unit has invested” in an accused as a matter in aggravation. Nor can we discern a reason they should. It is the accused’s amenability to discipline, not the unit’s willingness or capacity to expend time disciplining him, which is admissible under R.C.M. 1001(b)(5). To hold otherwise could lead to an irrational result: A member whose command thought him worthy of rehabilitation and lavished time and effort to save him would be treated less favorably than an otherwise-identical individual whose command believed him beyond salvage.
Eventually, even the military judge lost patience with Capt J’s fixation on such trivia, observing, “This trial should have been over four hours ago. We are devolving down, down into mini-trials over how many angels can dance on the head of a pin. This is starting to become a little bit on the absurd.” Yet this sua sponte guidance from the military judge did not deflect trial counsel’s apparent determination to use every color in her box of prosecutorial crayons. The members were subsequently treated to further testimony about the appellant’s temper; learned that the appellant’s dormitory room had to be subjected to a “safety check”; informed that the appellant “wasn’t perfect as far as [his] military bearing goes”; and were told he once dyed his hair blonde. There was no proper basis for admitting any of this evidence, and the military judge erred by allowing it to come before the members.

Prejudice

Having found error, we next consider whether the improper evidence may reasonably have had an impact on the outcome of the case. United States v. George, 52 M.J. 259, 261 (C.A.A.F.2000); United States v. Bins, 43 M.J. 79, 86 (C.A.A.F.1995). We conclude that it did.
When testing for prejudice, courts often examine the degree to which improper evidence was relied upon by counsel in argument. See, e.g. United States v. Sidwell, 51 M.J. 262, 265 (C.A.A.F.1999); United States v. Williams, 23 M.J. 582, 584 (N.M.C.M.R.1986); United States v. Hunter, ACM 29068, 1992 WL 225879, unpub. op. at 10-11 (A.F.C.M.R. 15 Sep 1992). Capt J’s argument was deeply troubling in this regard. Not only did she make extensive use of the improper evidence, she did so in a manner that clearly crossed the “exceedingly fine line which distinguishes permissible advocacy from improper excess.” United States v. Fletcher, 62 M.J. 175, 183 (C.A.A.F.2005) (quoting United States v. White, 486 F.2d 204, 207 (2d Cir.1973)). For example, Capt J argued the appellant’s disputes with his ex-wife showed “he couldn’t simply cooperate with a family care plan,” and that his former spouse “didn’t trust” him. She continued in a similar vein, referring to the appellant sarcastically as “the so-called man of the house,” and making reference to his financial difficulties before asking “[w]hat about his responsi *653 bility as a husband and father? Aren’t they held to a higher standard as well?”[5] She then adopted a novel theory of punishment, urging the members to impose a sentence that would make the appellant “take responsibility” not for his crimes, but for his offspring.
Such argument was clearly “calculated to inflame the passions or prejudices of the jury,” and was therefore improper. Fletcher, 62 M.J. at 183. See also United States v. Barrazamartinez, 58 M.J. 173, 176 (C.A.A.F.2003). The military judge’s curative efforts were at best weak. While sustaining one objection, he otherwise merely opined that the trial counsel’s characterizations “may be on the borderline.” Unfortunately, Capt J was just getting started. Over the next several pages of the transcript, she accused the appellant of leaving a three-year-old child in the company of a stripper (an accusation unsupported by any evidence, and one which the military judge properly instructed the members to disregard); suggested that the appellant needed to “man up”; argued (again, without evidence) that “any drug addict” would say that five or six months of confinement would be insufficient to rehabilitate the appellant, especially in light of his inability to iron his uniforms; and, with apparently unintentional irony, opined “the hits just keep on coming. I don’t think there is a rule that he missed.”
Although a court martial “is not a tea dance,” it cannot be permitted to devolve, as this one did, into a no-holds-barred trashing of the accused. United States v. Conway, 40 M.J. 859, 863 (A.F.C.M.R.1994) (quoting Rodriguez, 28 M.J. at 1023). Again and again, the trial counsel’s comments drew objections from the trial defense counsel or sua sponte admonishment from the military judge, yet the tone of her argument never changed. Reviewing the argument “within the context of the entire court-martial” we conclude it served to amplify and exacerbate the impact of the improperly-admitted evidence, and that the appellant was materially prejudiced thereby. United States v. Baer, 53 M.J. 235, 238 (C.A.A.F.2000). See also Article 59(a), UCMJ, 10 U.S.C. § 859(a).

Sentence Reassessment

Having found prejudicial error in the appellant’s sentencing proceeding, we must determine whether we can reassess the sentence. If we can determine that, absent the eiror, the sentence would have been at least of a certain magnitude, we may cure the error by reassessing the sentence rather than ordering a sentence rehearing. United States v. Doss, 57 M.J. 182, 185 (C.A.A.F.2002). We are unable to make such a determination. The error here was so pervasive and compounded to such an extent by the trial counsel’s argument that we cannot, with any degree of confidence, determine what sentence the members would otherwise have imposed.

Conclusion

The findings are correct in law and fact and are affirmed. Article 66(c), UCMJ, 10 U.S.C. § 866(c); United States v. Reed, 54 M.J. 37, 41 (C.A.A.F.2000). The sentence is set aside.[6] The record of trial is returned to The Judge Advocate General for remand to the convening authority. A rehearing on the sentence is authorized.

. Article 39(a), UCMJ, 10 U.S.C. § 839(a).

. MSgt S and SMSgt M had little contact with the appellant prior to his urinalysis, and their testimony relied heavily on documents in the appellant’s file and statements provided to them by others. The trial defense counsel objected to such hearsay, but was overruled. The military judge did not state the basis for his ruling.

. The trial counsel argued that the appellant's on-base citations were "convictions” admissible under R.C.M. 1001(b)(3). The military judge did not admit them on that basis, but did admit them, over defense objection, as evidence of the appellant’s "past service and rehabilitative potential,” admissible under R.C.M. 1001(b)(2) and (5). As noted above, however, R.C.M. 1001(b)(5) contemplates opinion testimony and R.C.M. 1001(b)(2) is limited to personnel records made or maintained in accordance with the regulations of the service concerned. The relevant service regulation here is Air Force Instruction 51-201, Administration of Military Justice, V 8.5.2.2.1 (26 Nov 2003), which permits admission of documents from an accused’s personnel file if there is evidence that the appellant received the document and had an opportunity to respond. The appellant’s traffic citations met neither of these criteria.

. The military judge also instructed the members that some of the evidence could be considered for unit impact or for rehabilitative potential. As discussed above, however, the evidence did not meet the criteria for admissibility under R.C.M. 1001(b)(4) or (5). Appellate government counsel urge us to treat this evidence as establishing a foundation under United States v. Ohrt, 28 M.J. 301 (C.M.A.1989), for the witness’ testimony that ble appellant lacked potential for rehabilitation. Even were we inclined to favorably consider this argument, we would be unable to square it with the facts. SMSgt M was never asked about the appellant’s rehabilitative potential, and MSgt S, rather than testifying as the government suggests, actually opined that the appellant could be rehabilitated.

. The answer is "no." Where, as here, an accused’s status as a spouse and parent is unrelated to the offenses, it is not properly a matter in aggravation under R.C.M. 1001(b)(4).

. Given our disposition of the case, we need not address the appellant's assignment of error alleging that his approved sentence was inappropriately severe.